# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Edmond E. Chang | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 4533 | **DATE** | October 27, 2011 |
| **CASE TITLE** | Ryan Collins (M-09895) v. Correctional Officer Dominguez, et al. | | |

**DOCKET ENTRY TEXT:**

Plaintiff has filed a complaint without paying the filing fee or submitting an *in forma pauperis* application to pay the fee in installments. Within 30 days of the date of this order, he must either prepay the $350 filing fee or submit a completed *in forma pauperis* application. Plaintiff's failure to comply with this order may result in dismissing the case for lack of prosecution. The clerk is directed to send to Plaintiff an *in forma pauperis* application and an amended complaint form.

■ [**For further details see text below.**]

Docketing to mail notices.

# STATEMENT

     Plaintiff Ryan Collins, Stateville Correctional Center inmate #M-09895, has filed this 42 U.S.C. § 1983 suit against Stateville Correctional Officers Dominguez, Ferenc, and Dunlap, as well as Stateville Warden Harding. Plaintiff asserts that, on several occasions in the months preceding this suit, he put either his arm or leg through the chuckhole (an opening in his cell). On one occasion, Plaintiff requested to speak to a lieutenant; on another occasion, Plaintiff sought a plunger. After Plaintiff refused orders to retrieve his arm or leg, officers pushed Plaintiff's arm or leg back into this cell. Plaintiff also complains that, on another occasion, when he refused to remove coverings from his windows, officers pushed him around his cell while handcuffed "like a rag doll," and denied him a meal.

     Plaintiff filed his complaint without either prepaying the filing fee or submitting an *in forma pauperis* application. The Prison Litigation Reform Act ("PLRA") requires all inmates to pay the full filing fee (at least eventually). 28 U.S.C. § 1915(b)(1). If Plaintiff is unable to prepay the $350 filing fee, he may submit an application to proceed *in forma pauperis* and pay the filing fee in installments. If his application is granted, an initial partial filing fee will be deducted from his trust fund account, and prison authorities will continue to make monthly deductions to pay the remainder of the fee. *See* § 1915(b)(1)(A), (B). To enable the court to determine if Plaintiff qualifies for as indigent, Plaintiff must submit with his application, "a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint . . . , obtained from the appropriate official of each prison at which the prisoner is or was confined." 28 U.S.C. § 1915(a)(2). Plaintiff's failure to pay the filing fee or submit a completed *in forma pauperis* application will result in dismissal of this case. N.D. Ill. Local Rule 3.3(e). The clerk shall forward to Plaintiff an *in forma pauperis* application.
(**CONTINUED**)

isk

Upon the Court's preliminary review of the complaint, *see* 28 U.S.C. § 1915A, one of the alleged incidents of excessive force does not adequately state an Eighth Amendment excessive force claim, while the second and third are adequate. The controlling inquiry for excessive force claims is whether prison guards "maliciously and sadistically" used force to cause harm, or instead applied force in a good-faith effort to maintain or restore discipline. *Wilkins v. Gaddy,* __ U.S. __ , 130 S. Ct. 1175, 1178 (2010) (*per curiam*). There is no "significant injury" requirement. *Id.* Here, Collins's first alleged excessive force claim fails to state a claim. Collins admits that, on April 30, 2011, he took his chuck hole "hostage" because of some complaint that he had (apparently concerning phone usage), and his dissatisfaction was the basis of his refusal to keep his leg in his cell. Collins alleges that Officer Dominguez attempted to push Collins's leg back into the cell – but, Collins admits, he "resisted." Dominguez managed to get much of Collins's leg back into the cell, but Collins still resisted and kept his foot out of the chuck hole. At this point, Collins alleges, Dominguez "slammed the chuck []hole" door "numerous times" against Collins's foot "with force." These allegations describe a good-faith use of force: Collins disobeyed a command to retract his leg into his cell, but refused to do so. The officer initially tried pushing Collins's leg back into the cell, yet Collins resisted. So the officer's initial response was the application of reasonable force, and it was *Collins* who elevated the situation by continuing to resist. *See DeWalt v. Carter*, 224 F.3d 607, 620 (7th Cir. 2000) ("not every push or shove by a prison guard violates a prisoner's constitutional rights"). The slamming of the door was the next step, and even then Dominguez used "force," but not even enough force to actually cause Collins to retract his foot – the force didn't work (Collins alleges that the officer "gave up"). It is not at all clear what Collins expected Dominguez to do after trying to push Collins's leg back into the cell (give up at that point?) The claim for April 30, 2011 is dismissed.

In contrast, the May 1 and May 22, 2011 allegations state a claim. Collins alleges that, on May 1, he once again was disobeying an order (this time refusing to uncover the cell window). When Lieutenant Dunlap entered Collins's cell to resolve the situation, Dunlap cuffed Collins to a rail. Collins alleges that Dunlap took all of Collins's personal belongings, and then instructed Collins to take a step back, which he refused to do. According to the complaint, Dunlap then swung Collins around the cell "like a rag doll," "physically abused me while still hand cuffed," "ran my body and chin against the wall an[d] then slammed me on the concrete bed frame. He then snatched me up by the handcuffs, injuring my left wrist." Those allegations are sufficient to state a claim for excessive force. (Collins also sufficiently alleges that Dunlap – who was the alleged user of excessive force on the scene – denied him medical treatment, but the medical-needs allegation against Dominguez is insufficient because there is only the conclusory allegation that Dominguez denied him medical treatment. To the extent that Collins complains about missing a meal in connection with this incident, "[o]ne or two missed meals are not actionable as Eighth Amendment violations." *Curiel v. Stigler*, No. 06 C 6880, 2008 WL 904894, *5 (N.D. Ill. Mar.31, 2008) (Zagel, J.)).

With regard to May 22, Collins admits once again that he took his chuck hole "hostage" (this time, because Collins wanted a plunger). Not surprisingly, the officers used force to get Collins's arm back through the chuck hole, but this time – allegedly – the force used gives rise to the inference (when viewed in Collins's favor) that its purpose was to cause harm rather than a good-faith effort to maintain discipline. The complaint alleges that Ferenc grabbed and twisted Collins's arm one way, while twisting Collins's wrist the other way, and meanwhile, Dominguez was slamming the chuck hole door against Collins's arm. As Collins continued to resist, Ferenc applied even more pressure, to the point of "excruciating pain" and causing Collins's shoulder to pop out of place (Collins also allegedly suffered scratches on his arm). For now, taking inferences in Collins's favor, these allegations are sufficient to state a claim that Dominguez's and Ferenc's use of force was so out of proportion to the disciplinary need that the purpose of force was to maliciously and sadistically cause harm. Collins's denial of medical-needs claim against these two officers, who were the alleged users of force on the scene, also survives.

Finally, Defendant Harding (the Warden of Stateville Correctional) is dismissed. There are no allegations

**STATEMENT (continued)**

that Harding was personally involved in any way, whether directly or by causing the officers to injure Collins.

Collins is remind that, within 30 days of the date of this order, he must either prepay the $350 filing fee or submit a completed *in forma pauperis* application. Plaintiff's failure to comply with this order may result in dismissing the case for lack of prosecution. The Clerk is directed to send to Plaintiff an *in forma pauperis* application and an amended complaint form.